IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>　　　　　　　　　　　　　　　　) | Civil No. 4:19-cv-00143 |
| 　　　　　　Plaintiff,　　　　　　) | |
| 　　　　　　　　　　　　　　　　) | |
| 　　　　　　v.　　　　　　　　　) | VERIFIED COMPLAINT FOR |
| 　　　　　　　　　　　　　　　　) | FORFEITURE *IN REM* |
| APPROXIMATELY 570 PAIR　　　) | |
| OF ASSORTED NIKE AND　　　　) | |
| ADIDAS SHOES,　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　) | |
| 　　　　　　Defendants.　　　　　) | |
| 　　　　　　　　　　　　　　　　) | |

Plaintiff, United States of America hereby files and serves this
VERIFIED COMPLAINT IN REM and alleges as follows:

## I.　　NATURE OF THE ACTION

1.　　This is an action to forfeit and condemn specific property to
the use and benefit of the United States of America ("Plaintiff") due to its
involvement in violations of 21 U.S.C. § 846 (attempt and conspiracy) and
§ 841(a)(1)(prohibited acts), and 18 U.S.C. § 1956(a)(1)(B)(i) (laundering
of monetary instruments).

2.　　The Defendant property is believed to be subject to forfeiture
pursuant to 21 U.S.C. § 881(a)(6), as proceeds of money, negotiable
instruments, securities, or other things of value furnished or intended to

be furnished by a person in exchange for a controlled substance, in violation of Subchapter I – Control and Enforcement, of Chapter 13 – Drug Abuse Prevention and Control, and Title 21 – Food and Drugs, of the United States Code.

3.    The Defendant property is believed to be subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as personal property involved in a transaction or attempted transaction in violation of Section 1956 of Title 18, United States Code, and as property traceable to such property.

## II.    DEFENDANT *IN REM*

4.    The Defendant property is generally described as approximately 570 pair of assorted Nike and Adidas shoes seized during the execution of a search warrant at Dino's Storage, 5327 Southeast 14th Street, Des Moines, Iowa. The Defendant property is in the custody of local law enforcement.

## III.   JURISDICTION, VENUE, AND PROCEDURAL AUTHORITY

5.    This Court has jurisdiction over an action commenced by the United States as Plaintiff, pursuant to 28 U.S.C. § 1345.

6.    This Court has original jurisdiction over this action for the recovery or enforcement of a fine, penalty, or forfeiture incurred under

an Act of Congress, pursuant to 28 U.S.C. § 1355(a).

7.    This Court also has jurisdiction over this action because acts or omissions giving rise to this civil forfeiture occurred in the Southern District of Iowa, therefore, this action may be brought in this District, pursuant to 28 U.S.C. § 1355(b)(1)(A).

8.    Venue is proper in this District because this is a civil proceeding for the recovery of a pecuniary fine, penalty, or forfeiture, and is being prosecuted in the District where the action accrues and where the Defendant property is found, as authorized by 28 U.S.C. § 1395(a) and (b).

9.    Venue is also generally proper in this District under 28 U.S.C. § 1391(b)(2) because it is where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated."

10.    The general rules for civil forfeiture proceedings are set forth in 18 U.S.C. § 983.

## IV. FACTS

11.    The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act

of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

12.   The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

13.   Schedule I substances have a high potential for abuse, and have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of these drugs under medical supervision. 21 U.S.C. § 812(b)(1)(A)-(C).

14.   Schedule II substances have a high potential for abuse, but the drugs or substances have a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions. Abuse of Schedule II controlled substances may lead to severe psychological or physical dependence 21 U.S.C. § 812(b)(2)(A) – (C).

15.   Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute a controlled substance unless authorized by law to do so.  21 U.S.C. § 841(a)(1).

16.    Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions.  21 U.S.C. § 846.

17.    Under Title 18, United States Code, Section 1956(a)(1)(B), it is illegal to knowingly conduct, or attempt to conduct, a financial transaction with the proceeds of a specified unlawful activity for the purpose of concealing or disguising the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity.

18.    Section 1956(c)(7)(A) of Title 18, United States Code defines the term "specified unlawful activity" to including any offense under 18 U.S.C. § 1961(1), which includes "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise in a controlled substance . . . punishable under any law of the United States."

19.    It is believed that, or will be after a reasonable opportunity for further investigation and discovery, evidence will show the Defendant property is traceable to the proceeds of prohibited controlled substance offenses, and is traceable to financial transactions involving the proceeds of specified unlawful activity.

20.    In November 2017, the Des Moines Police Department (hereinafter "DMPD") received information that a black male named

"Diamond" was selling large amounts of methamphetamine, marijuana, and cocaine in Des Moines.

21.   The information explained "Diamond" had storage units at Storage Mart, located at the intersection of Southeast 14th and Bell Avenue in Des Moines, Iowa, and the Dino's Storage on Southeast 14th in Des Moines, Iowa.

22.   The DMPD was also informed that "Diamond" conducted drug deals at area hotels and the Storage Mart.

23.   The person sharing this information identified a jail booking photo of Diamond Martell WEATHERALL as the person previously described as "Diamond."

24.   During the month of November 2017, representatives from Dino's Storage and Storage Mart confirmed that WEATHERALL had rental units at both storage complexes.

25.   WEATHERALL has rented storage unit #563 at Storage Mart since January 28, 2015 and storage unit #N-2-59 at Dino's Storage since October 29, 2015.

26.   The DMPD conducted surveillance and confirmed that WEATHERALL visited both units frequently from December 2017

through October 2018.

27.   In October 2018, the DMPD, again, received information that WEATHERALL was still involved in dealing methamphetamine, marijuana, and cocaine.

28.   Methamphetamine, marijuana, and cocaine are all controlled substances.

29.   WEATHERALL was not authorized by law, at any time relevant to this Complaint, to distribute controlled substances to others.

30.   On November 1, 2018, members of the DMPD went to Dino's Storage with a properly-trained and certified drug-detecting canine to conduct an exterior sniff of storage unit #N-2-59.

31.   A member of the DMPD with the properly-trained and certified drug-detecting canine conducted a sweep of the hallway that contained the storage unit, without knowing which storage unit or units were under suspicion.

32.   The trained and certified drug-detecting canine positively indicated on unit #N-2-59, which was rented by WEATHERALL.

33.   The properly-trained and certified drug-detecting canine did not positively indicate on any of the other storage units in the hallway.

34.   Thereafter, another member of the DMPD was assigned to watch Dino's Storage, unit #N-2-59 while a search warrant was sought.

35.   At Storage Mart, the same process was followed, and the properly-trained and certified drug-detecting canine positively indicated at storage unit #563, which was also rented by WEATHERALL.

36.   The properly-trained and certified canine did not indicate on any other units.

37.   Based on the properly-trained and certified canine's positive indication to the presence of controlled substances at both storage units, an application for a search warrant was prepared.

38.   Later on November 1, 2018, a search warrant, supported by probable cause, was properly-issued by a Polk County, Iowa judge to search Dino's Storage, unit #N-2-59 and Storage Mart, unit #563.

39.   That same day, the search warrant was executed at Dino's Storage, unit #N-2-59.

40.   After being informed about the warrant, an on-site manager opened the unit using a key.

41.   Photographs were taken of the unit prior to itemizing the evidence.

8

42.   The following evidence was lawfully-found at Dino's Storage, unit #N-2-59:

| Type | Item |
| --- | --- |
| | |
| Cocaine | Torn baggie with cocaine (est. 25 grams) |
| Cocaine | Large heat sealed package with cocaine (est. 1,023 grams) |
| Cocaine | Gallon-sized Ziploc bag with cocaine (est. 408 grams) |
| Cocaine | Baggie with cocaine (est. 15 grams) |
| Marijuana | 5 heat sealed packages of marijuana (est. 2,449 grams) |
| Currency | Three bundles of currency totaling $6,020.00 |
| Currency | $4,000 in small safe |
| Drug Paraphernalia | Working digital scale and scoop with cocaine residue |
| Firearm or firearm-related item | A Walther P1 9mm caliber pistol, bearing serial number 180557W486 |
| Firearm or firearm-related item | A Smith and Wesson M&P Bodyguard .380 caliber pistol, bearing serial number KDY9745 |
| Firearm or firearm-related item | A loaded Walther PPX 9mm caliber handgun, bearing serial number FAO2256 |
| Firearm or firearm-related item | A Ruger LCR 38 SPL+P .38 caliber 5-cylinder revolver, bearing serial number 1540-36058 |
| Firearm or firearm-related item | A loaded Metroarms American Classic II 1911 .45 caliber pistol, bearing serial number A12-05146 |

| Type | Item |
| --- | --- |
| Firearm or firearm-related item | A loaded Colt Defender .45 caliber handgun, bearing serial number DR631444 |
| Firearm or firearm-related item | A loaded Taurus PT111 G2 9mm caliber handgun, bearing serial number TIP06684 |
| Firearm or firearm-related item | A loaded Ruger AR-556 5.56 caliber rifle, bearing serial number 851-22868 |
| Firearm or firearm-related item | A loaded IO Inc. Model IO-15 5.56 caliber multi rifle, bearing serial number NH0000148 |
| Firearm or firearm-related item | A black magazine from Walther P1 firearm |
| Firearm or firearm-related item | An empty black magazine from Smith & Wesson M&P Bodyguard firearm |
| Firearm or firearm-related item | An empty black .380 extended magazine |
| Firearm or firearm-related item | Empty metal .380 magazines previously in "Kimber" box with M&P Bodyguard |
| Firearm or firearm-related item | Live brass FMJ "FC 9mm Luger" round from chamber of Walther PPX |
| Firearm or firearm-related item | One black magazine previously inserted in Walther PPX |
| Firearm or firearm-related item | Live brass FMJ "S&B 9x19 16" rounds |
| Firearm or firearm-related item | Live brass FMJ "WIN 9mm Luger" rounds from inserted magazine of PPX |
| Firearm or firearm-related item | Live brass FMJ "WIN" rounds |
| Firearm or firearm-related item | Live aluminum FMJ "FC NR 45 Auto" round from chamber of Metroarms American Classic II |

| Type | Item |
|---|---|
| Firearm or firearm-related item | Black magazine previously inserted into Metroarms American Classic II |
| Firearm or firearm-related item | Live Aluminum FMJ "FC NR 45 Auto" from magazine previously inserted into Metroarms American Classic II |
| Firearm or firearm-related item | Live HP "Federal 45 Auto" round from chamber of Colt Defender |
| Firearm or firearm-related item | Live "SIG 45 Auto" rounds from magazine of Colt Defender |
| Firearm or firearm-related item | Empty magazine from chamber of Taurus PT111 |
| Firearm or firearm-related item | Live "FC 9mm Luger" round from chamber of Taurus PT111 |
| Firearm or firearm-related item | Live "WIN 9mm Luger" rounds from magazine of Taurus PT111 |
| Firearm or firearm-related item | 30 live rounds, "NATO LC15" from magazine of Ruger AR-556 |
| Firearm or firearm-related item | One live "WIN USA 5.56mm" round from chamber of IO-15 |
| Firearm or firearm-related item | 29 live "WIN USA 5.56mm" rounds from inserted magazine of IO-15 |
| Firearm or firearm-related item | Black PMAG 30 magazine found in tactical bag |
| Firearm or firearm-related item | Black PMAG 40 magazine found in tactical bag |
| Firearm or firearm-related item | 27 live rounds "Aguila 5.56 16" |
| Firearm or firearm-related item | 1 live round "NATO LC-15" from "PMAG 30" magazine |
| Firearm or firearm-related item | 40 live rounds "WIN USA 5.56mm" from "PMAG 40" magazine |
| Firearm or firearm-related item | Empty black PMAG 40 magazine found in tactical bag |

| Type | Item |
| --- | --- |
| Firearm or firearm-related item | Empty black PMAG 40 magazine previously containing live rounds found in tactical bag |
| Firearm or firearm-related item | 17 live brass rounds "WIN USA 5.56" from black "PMAG 40" magazine found in tactical bag |
| Firearm or firearm-related item | One metal "Colt 45 Auto" magazine found in the tactical bag |
| Firearm or firearm-related item | Four live nickel "Federal 45 Auto" rounds from metal Colt 45 Auto magazine |
| Firearm or firearm-related item | Three live nickel "Hornady 45 Auto" rounds from metal Colt 45 Auto magazine |
| Firearm or firearm-related item | One black PT111 G2 magazine from tactical bag |
| Firearm or firearm-related item | 11 live brass "WIN 9mm Luger" rounds from "PT111 G2" magazine |
| Firearm or firearm-related item | 1 black "Glock" magazine found in tactical bag |
| Firearm or firearm-related item | Six live nickel "Federal 40 Smith & Wesson" rounds from "Glock" magazine |
| Firearm or firearm-related item | Six live brass "Federal 40 Smith & Wesson" rounds from "Glock" magazine |
| Firearm or firearm-related item | Empty black "Glock" magazine |
| Firearm or firearm-related item | Empty black and silver "Chip McCormick Custom LLC Power 10" magazine |
| Firearm or firearm-related item | 7 live HP rounds "Hornady 45 Auto" from "Chip McCormick Custom LLC Power 10" magazine |

| Type | Item |
|------|------|
| Firearm or firearm-related item | 1 live round "Federal 45 Auto" from "Chip McCormick Custom LLC Power 10" magazine |
| Firearm or firearm-related item | 1 live HP "Federal 45 Auto" from "Chip McCormick Custom LLC Power 10" magazine |
| Firearm or firearm-related item | 1 live critical defense round "Hornady 45 Auto" from "Chip McCormick Custom LLC Power 10" magazine |
| Firearm or firearm-related item | One empty black "ProMag" magazine |
| Firearm or firearm-related item | 14 live rounds "FC NR 45 Auto" from black "ProMag" magazine |
| Firearm or firearm-related item | 1 black barrel magazine "1911 28 RDS" |
| Firearm or firearm-related item | 11 live HP rounds "Federal 45 Auto" from black barrel magazine "1911 28 RDS" |
| Firearm or firearm-related item | 1 live round "SIG 45 Auto" from black barrel magazine "1911 28 RDS" |
| Firearm or firearm-related item | 1 black/clear plastic .40 cal barrel magazine, 50 round capacity |
| Firearm or firearm-related item | 37 live rounds .40 cal "GFL 40 Smith & Wesson" from black/clear plastic .40 cal barrel magazine, 50 round capacity |
| Firearm or firearm-related item | One empty double barrel M16/M4 magazine, 100 round capacity |
| Firearm or firearm-related item | 93 live rounds "Aguila 5.56 16" from double barrel M16/M4 magazine, 100 round capacity |
| Firearm or firearm-related item | 1 live round "Aguila 223 REM" from double barrel M16/M4 magazine |

| Type | Item |
|---|---|
| Firearm or firearm-related item | 4 boxes of "Aguila" 5.56x45mm live ammunition containing 190 live rounds |
| Firearm or firearm-related item | 1 box of "Ten Ring" ammunition 380 Auto containing 14 live rounds |
| Firearm or firearm-related item | 1 box of "Hornady" 357 Mag ammunition containing 7 live rounds |
| Firearm or firearm-related item | 2 live "Federal 38 Special" rounds |
| Firearm or firearm-related item | 1 box of "Sig Sauer" 45 auto ammunition containing 17 live rounds |
| Firearm or firearm-related item | 7 live Federal NR Auto rounds |
| Firearm or firearm-related item | 1 box of "CCI" 22 LR pest control shotshell containing 20 live rounds |
| Firearm or firearm-related item | One empty metal "Colt 45 Auto" magazine |
| Firearm or firearm-related item | 5 live rounds "FC NR 45 Auto" from metal "Colt 45 Auto" magazine |
| Firearm or firearm-related item | One empty black "PMAG D-60" drum magazine, 45-round capacity |
| Firearm or firearm-related item | One empty green "PMAG 30" magazine |
| Firearm or firearm-related item | 18 live rounds "Aguila 5.56 16" from green "PMAG 30" magazine |
| Firearm or firearm-related item | One empty green ammo can |
| Firearm or firearm-related item | 3 boxes of "CCI" 22 LR pest control shotshell containing 60 live rounds |
| Firearm or firearm-related item | 4 live rounds "S&B 9x19 16" |
| Firearm or firearm-related item | 1 live round "WIN 9mm Luger" |

14

| Type | Item |
|---|---|
| Firearm or firearm-related item | 1 live round "FC 9mm Luger" from green ammo can |
| Firearm or firearm-related item | 1 black ammo can containing 2350 misc. live rounds |
| Cellphone | Black Samsung Galaxy S8 cellphone |
| Other property | 570 pairs of new assorted Nike and Adidas shoes in boxes |
| Firearm or firearm-related item | Various gun boxes and holsters, receipts for firearms for WEATHERALL |
| Miscellaneous property | Two pieces of mail and a shipping label for WEATHERALL |

43.    A lawfully-issued search warrant, supported by probable cause, was executed the same day at Storage Mart, unit #563.

44.    An on-site manager used a key to access the unit.

45.    Photographs of the unit were taken before any evidence was inventoried.

46.    The following evidence was lawfully-found found at Storage Mart unit #563:

| Type | Item |
|---|---|
| Drug Packaging | Vacuum-sealed packaging with marijuana residue |
| Drug Packaging | Vacuum-sealed packaging with marijuana residue |

| Type | Item |
|---|---|
| Firearm-related item | Gun box with MC Sports receipt for Taurus 9mm in WEATHERALL's name |

47.   Based on the evidence found in the storage units, a search warrant application, based on probable cause, was written for WEATHERALL's residence at 4317 SE 17th Street, Des Moines, Iowa.

48.   Included in the application was a request to search three vehicles that were observed in the driveway of the residence, all of which were registered to WEATHERALL: (1) a black 2005 Acura TSX, Iowa license plates EKW084, (2) a gray 2013 Acura ATL, Iowa license plates HCE450, and (3) a black 2005 Acura ATL, Iowa license plates DWG971.

49.   This search warrant was issued on November 1, 2018 and executed that same day.

50.   While executing this warrant, officers saw the United States Postal Service ("USPS") was dropping off a package.

51.   Officers executed the search warrant anyway, knocking and announcing their presence.

52.   After the officers failed to receive a response to their attempted knock and announce, an officer used a door ram to attempt to open the front door.

53.   It took several tries to enter the home.

54.   When officers entered, they observed WEATHERALL, naked, standing in front of the open bathroom door.

55.   In the bathroom was a white plastic container with cocaine residue inside. The bathroom floor and lid of the toilet had white powder residue that later tested positive for cocaine.

56.   After entry, an officer went back outside and confirmed with USPS that the package was for the residence and addressed to Danielle Leonard, the mother of WEATHERALL's children.

57.   The package was brought into the property to be inventoried with the rest of the evidence.

58.   Officers again took pictures of everything before itemizing the evidence.

59.   The following property was lawfully-seized from the residence

| Type | Item |
|---|---|
| Money | $750 |
| Marijuana | USPS Package for Danni Leonard: 2 vacuum/heat sealed bags (est. 924 grams of marijuana) |
| Marijuana | Tupperware container of marijuana (est. 306 grams) |
| Marijuana | Two vacuum/heat sealed bags with marijuana (est. 916 grams) |

17

| Type | Item |
|------|------|
| Marijuana | A single bag (est. 25 grams) |
| Cocaine | White container found in bathroom and lid with cocaine residue |
| Drug Paraphernalia and Packaging | Working digital scale with cocaine residue, baggies, and a bent plastic card with cocaine residue |
| Drug Paraphernalia and Packaging | Food sealer |
| Drug Paraphernalia and Packaging | Working digital scale and baggies |
| Drug Paraphernalia and Packaging | Working digital scale |
| Firearms and firearm-related items | a Sig Sauer MPX rifle with Romeo4 optic, bearing serial number 62B025880 |
| Firearms and firearm-related items | a loaded Glock 23 Gen 4 .40 caliber handgun, bearing serial number BDDX810 |
| Firearms and firearm-related items | a loaded Kimber Micro .380 caliber handgun, bearing serial number P0060899 |
| Firearms and firearm-related items | a loaded Glock 23 .40 caliber handgun, bearing serial number 2AD207 |
| Firearm-related items | Four rifle magazines found in Sig Sauer MPX rifle case, 2 were loaded with 9mm rounds |
| Firearm-related items | Additional loaded magazine for the Kimber |
| Firearm-related items | Extended Glock magazine loaded with 20 .40 cal. rounds |
| Firearm-related items | Diamond WEATHERALL Iowa Weapons Permit |

| Acura TI with Iowa License Plate HCE450 | |
| --- | --- |
| Type | Item |
| Drugs - Cocaine | Two small Ziploc baggies with cocaine (est. 3 grams) |
| Firearm-related items | A loaded Smith and Wesson .357 Magnum revolver, bearing serial number CZT5043640-8 |
| Firearm-related items | Box of Smith & Wesson .40 caliber ammunition |
| Firearm-related items | Ammunition tray of Sig 380 ammunition |
| Firearm-related items | Two loaded Glock magazines (.40 cal) |

60.   During the search of the residence and vehicles, a member of the DMPD spoke with WEATHERALL in the DMPD vehicle that was parked in the driveway.

61.   During this interview, WEATHERALL waived his *Miranda* rights and agreed to speak to law enforcement.

62.   This waiver is recorded, as is the interview.

63.   WEATHERALL stated he was not employed.

64.   WEATHERALL claimed he had a shoe business since the age of 16.

65.   WEATHERALL stated he was letting a couple of buddies hold on to the shoes for his shoe business.

66.   WEATHERALL stated he used to keep shoes in one of his

19

storage units, but added things didn't work out.

67.   WEATHERALL initially denied having cocaine in the home or large amounts of marijuana.

68.   After being shown the search warrants, and told that law enforcement had been to both units already, WEATHERALL stated he was "a dead man."

69.   WEATHERALL said he had a weapons permit, but that he wouldn't anymore.

70.   WEATHERALL repeated that he was "a dead man."

71.   WEATHERALL stated that he occasionally smoked marijuana.

72.   WEATHERALL talked about his shoe collection, stating he built it up since he was 16 and that there was probably $100,000 in value.

73.   WEATHERALL stated that it varied as to whether he was getting the drugs from out-of-state or locally.

74.   WEATHERALL explained he was currently in debt, and described it as not being a happy number.

75.   WEATHERALL said he was supposed to hold on to half the money in the storage unit, and the other half was his shoe money.

76.   WEATHERALL stated that the other little bit was his savings, but $5,000 was not his money and he would need to pay that back.

77.   In a second post-*Miranda* statement that same evening, WEATHERALL explained the US Postal package contained marijuana.

78.   WEATHERALL said US Postal package containing marijuana was delivered to him because he was in debt. He was supposed to take care of the package. Once he found out where it was going, he was going to deliver the package to the actual owner.

79.   During the execution of the various search warrants, no business records were discovered that would support the assertion WEATHERALL was operating, or had operated, a shoe business.

80.   The following is a summary of some of the significant items of investigative interest found during the execution of the search warrants at the two storage units and WEATHERALL's residence:

> a)   An estimated 1,414.82 grams of cocaine, possessed by WEATHERALL, in full or in part, for distribution;
>
> b)   An estimated 4,290,64 grams of marijuana, including the marijuana from the USPS package, which WEATHERALL possessed, in full or in part, for distribution;

c)   An estimated  14.67 grams of mushrooms, which WEATHERALL apparently possessed for distribution;

d)   An estimated 37.29 grams of N-ethylpentylone, which WEATHERALL apparently possessed for distribution;

e)   U.S. currency totaling $10,770;

f)   14 firearms, magazines, ammunition, and firearms accessories;

g)   Digital scales, with drug residue, used in the drug-dealing trade;

h)   Empty baggies, consistent with drug trafficking;

i)   Packaging with drug residue, consistent with drug trafficking; and

j)   570 pairs of new assorted Nike & Adidas shoes in shoe boxes.

81.   The foregoing controlled substances, currency, firearms, digital scales, baggies, and other property were part of,  used as part of, or purchased, in whole or in part, with proceeds of WEATHERALL's illegal drug trafficking.

82.   Based on a review of search warrant photos, rather than the shoes in the storage unit being of a wide variety of sizes, consistent with a business inventory, the shoe boxes appear to show WEATHERALL accumulated shoes in the same or similar sizes, namely sizes 10 – 11.

83.    One of the records found during the search of the first storage unit showed a shipment of a single pair of "Air Jordan Retro 1 HI OG Wheat Mens Lifestyle Shoe," shipped on December 26, 2017.  The shoes were shipped to "Diamond Weatherall, 4317 SE 17th Street, Des Moines, IA 50320-1531" with an email of Foxthakillah@gmail.com", and did not list a business name. The bill also indicates WEATHERALL was to be personally billed, with the same contact information.

84.    In a text message exchange between WEATHERALL and an unnamed person on May 7, 2018, WEATHERALL was asked by the other person, with whom he was engaging in an illegal transaction concerning controlled substances, "Send me some all black js or all white shoes ill pay them just take off tab."  WEATHERALL was asked for "Size 10 or 10.5", and to send "Nice ones."  He informed his customer he had some "Jordans" and "Adidas" shoes. Therefore, the shoe collection is connected to WEATHERALL's drug trafficking.

85.    WEATHERALL was charged by a federal grand jury in the Southern District of Iowa on January 23, 2019 with possession with the intent to distribute at least 500 grams of a mixture and substance containing a detectible amount of cocaine and marijuana, possession of

one or more firearms in connection with a drug trafficking crime, and being an unlawful drug user in possession of a firearm.

86.    On February 22, 2019, WEATHERALL was charged in a Superseding Indictment by a federal grand jury in the Southern District of Iowa with possession with the intent to distribute at least 500 grams of a mixture and substance containing a detectible amount of cocaine and marijuana, possession of one or more firearms in connection with a drug trafficking crime, and being an unlawful drug user in possession of a firearm.

87.    At no time pertinent to the events herein, did WEATHERALL incorporate or create a business entity through which he was operating a shoe business.

88.    At no time pertinent to the events herein is it believed WEATHERALL paid local, state, or federal sales or other taxes related to a shoe business.

89.    In Iowa, retailers who sell taxable tangible personal property, services, and products must obtain a sales tax permit.

90.    At no time pertinent to the events herein is it believed WEATHERALL had a permit or license to operate a shoe business.

91.   At no time pertinent to the events herein is it believed WEATHERALL publically advertised in newspapers, on television, on radio, via billboard, or on Internet sites that he, or a business he operated, was selling shoes.

## CLAIM FOR RELIEF

WHEREFORE, the United States prays that the Defendant property be forfeited to the United States and that it be awarded its costs and disbursements in this action and for such other and further relief as the Court deems property and just.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By: */Craig Peyton Gaumer*
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex,
Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Jason R. Noble, hereby verify and declare under penalty of perjury that I am an investigator with the Des Moines, Iowa Police Department, and that I have read the foregoing Verified Complaint and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and the Des Moines Police Department and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as an investigator with the Des Moines Police Department.

Dated: May 8, 2019.

_____
Jason R. Noble, Investigator
Des Moines Police Department